I believe I'd reserve five minutes of my time. The issue in this case, and I believe the issue this court wants to address, the reason for granting oral argument, is whether or not there was sufficient evidence for the trial court to imply an enhancement to Mr. Carlton's sentence. There, based on the record, there's two errors assigned. There's no doubt, I guess, given by the fact that I didn't address the sufficiency of the evidence that his girlfriend brought or introduced marijuana into the penal facility by giving him or passing to him marijuana. The question becomes, for sentencing purposes, what was the purpose for which he was given that marijuana? The government alluded to the probation office that it was for Mr. Carlton to distribute or sell, therefore he was entitled to a two-point enhancement in the calculation of his sentence. I attached Mrs. Anderson's complete testimony as a record exhibit for the specific purpose of allowing this court to get right to the point and see that there's zero evidence, zero testimony, zero inference that can be made that the introduction of the marijuana was for Mr. Carlton to either sell or distribute the marijuana while he was in the penal facility and therefore the court erred in assessing the two-point enhancement provision. You say zero inference can be made. Are you talking about an inference from her testimony or the evidence as a whole? Well, I think the evidence as a whole and certainly from her testimony. So how much marijuana did they find? I think there were 40 glove tips and I don't remember. 40? I think it was 40. Yes sir. And help me understand what happened. I mean I understand that it was on the person of a child. Well my understanding from the record is that she gave it to the child and that through some manipulation Mr. Carlton put his hands in the kid's pocket or something and took the marijuana and then later digested it and passed it several days later. All 40? Or a fair amount of it. I can't state with specificity exactly how many but I'm assuming he passed off 40 since there was reference to 40 in the record. Because Miss Anderson's quantity how much was it in those 40 different because what I understand is the tip of latex like the fingers from a glove. I don't remember each one. I don't remember exactly how much it totally weighed. All right. Okay. But I understand your point. Yeah my point there could be sufficient evidence assuming we all agree that she said absolutely nothing about what he intended to do with it once he got it. My question goes to whether or not there is other evidence sufficient to support the finding that the enhancement was appropriate. In other words other evidence of a quantity large enough from which a reasonable inference could be drawn that his intent was to distribute it. You understand my question? I understand your question. All right. And I'm glad you gave the first point to me because I agree there's zero testimony from her. So let's you know . . . Was it represented that this testimony was given at trial or was it just something that was out of the offense reports that the probation officer picked up? The probation office for the PSR says that the information they received from the United States attorney said that Miss Anderson testified at court. So if you want to say that's hearsay that's hearsay. But I know that probation office relies a lot on what is told to them by the government. I'm not saying the government did it on purpose. I'm not making any accusations. But the information conveyed was erroneous because a reading of Miss Anderson's 23 page testimony makes no reference to distribution, no reference to selling. I would gather if I had to speculate that perhaps in some debriefing because she was a government witness who had pled guilty acknowledging she brought the stuff in the facility. And you know interestingly and as Co-Counsel and I were talking before she wasn't searched before and she wasn't searched on her exit leaving the facility despite dropping some of it in from her pocket. So to say that he passed all authority I cannot state here accurately that today because she dropped some as she left the facility. But that being said he was found with a substantial amount of marijuana in his possession or passing it through his system. And why doesn't that support the decision? Well I don't think it supports it because that was not, first of all I'm going to say that was not the basis for the enhancement. What does it matter? We're on plain error aren't we? Am I wrong on that? No you're not. Any way that it's appropriate we have to affirm don't we? That's what the law says. And I think that in this case and I'm going to argue around that as best I can because I understand what the law is. But the whole premise for the enhancement was the government statement to the probation office, to the court and even the court made the error on the record of saying the testimony said, which is not correct. Right. Well somebody else made an error that day too that we haven't yet talked about right? The lawyer, was it you counsel? No ma'am I'm appointed a counsel. The lawyer acquiesced to the, acquiesced is the nicest, to the statement. Isn't that correct that the testimony of Ms. Anderson said that? I disagree with that to this extent. The government says that it was invited error. I think if you read it carefully the sentencing at some point the lawyer, for lack of a better term, gave up because he was continually beat down by the judge and the government. You know at some point it's essentially like well Your Honor if that's how you're going to find, I sort of still disagree but let's go on to something else. He, I mean obviously he objected because he did it in writing and there's two assignments of error that I addressed on the sentencing that he put in writing. He didn't even argue the second one at the sentencing hearing, focused solely on the lack of Ms. Anderson's testimony and at some point he sort of said but, you know, and to me that's, you know, at some point with all due deference to the respect that I like to give a judge, you know, if you keep beating me down at some point I'm going to understand. I can argue till the cows come home but you're not really buying my argument. Was there, were there any post-trial motions filed by the defense? Not. Let me, let me, let me, let me ask what I hope will be a better question. What I'm getting at is, it just seems fair in the first instance that the trial court ought to be able to correct an error as obvious as this one. In other words, an examination of the transcript would have revealed that that testimony was not there. So in a post-trial motion, for example for a new trial, then you would just you're right, I made a big error, no enhancement or you're right, I was in error relying on that testimony but there's other evidence in the record sufficient to support the enhancement. That's what I'm getting at. Was, was this error called to the trial judge's attention prior to it being raised in a brief before this court? No, Your Honor. It was only, if you want to say brought to the court's attention in the motion to say the enhancement's not proper. In other words, the only argument I could find that was made was at the sentencing hearing itself that says the PSR is wrong. Okay. If that's a motion, that was a motion. In other words, he objected to the PSR. I understand he did, but, but not a subsequent motion. But the upshot of that objection was not that the testimony doesn't support the enhancement, was it? I mean, he didn't say, she didn't say that. Yes, he did. In his motion objecting to the PSR, that was his statement. He said she did not say that. Yes. Now the government says he invited Eric because at the argument stage of the sentencing hearing, he eventually, and I don't want to use the word acquiesce, but he, he, he felt that at some point, I think, I got to go on because, you know, I've said it's not there. I've said it's not there. The government says, well, it's there. The PSR, the judge says, well, the PSR's there. But, you know, that's a factual determination. Now granted it's . . . And all you got to do is get a copy of the transcript. If, if he was convinced it wasn't there, he could have just had that portion of the transcript transcribed or listened, I don't know how they do it in that court, listen to the tape, something. I agree too, but I could also say it's the government's burden because they have to prove, even those preponderance, they have to prove that that fact exists such that the sentence . . . Except when they get to the hearing and he acquiesces that it exists. But I think the, the judge, the fact that he filed a written objection to the sentencing should put the government on notice. Hey, look, there may be a problem here. If you want to go that route, there may be a problem. Let us as the government group could probably get a transcript much quicker than the defendant who's got to go through CJA and so forth and get a, you know, get the 23 pages and then just read it and say, you know, again, I probably envision that is something she may have told the government in debriefing, but that's speculation on my part because there's nowhere in this record does it say that. You said several times today that this was a factual error, that what Ms. Anderson's testimony was, that the court was factually wrong about it, correct? Yes, ma'am. Okay. Do you, we have a, we have a line of cases in our circuit that says factual error can never be plain error because it can always be corrected at the trial court. How do you, and that would be cases like United States v. Lopez and United States v. Claiborne. How do you get around those, that doctrine that factual error can never be plain error because it can be fixed? The same type of questions that Judge, that Judge Graves is asking you about why it wasn't fixed. What do we do with our precedent that says it can never be plain error? But it can be clear error. There's a line of cases that also maybe make a slight distinction that say clear error. And I cite those in my brief. I think it's the Rodriguez case. And, you know, the Smith case out of this circuit said when a defendant objects to a particular findings in a pre-sentence report, the sentencing court must resolve the specifically disputed issues of fact. It was disputed. At that point, and that's U.S. v. Smith, 13 F. 3rd, 8-16, 1990. At that point, the government could have said, Your Honor, we have a copy of the transcript that shows Ms. Anderson testified, if that was the case. Or, I don't know of anything that precludes them from putting Ms. Mr. Carlton filed a written objection. That's notice to the court. I've got a problem. There's a problem. I disagree. Now the burden shifts back to the government to come forth with evidence to fix the problem. And I reserve the opportunity to do that. Good morning, Your Honors. My name is Mignon Griffin, and I'm here on behalf of the government in this case. Your Honors, a mistake was made below when Mr. Cothran was sentenced. Ms. Anderson's testimony was inappropriately characterized. But the mistake was made by the court, the government, and for purposes of this appeal, most importantly, by the defendant. The defendant was not browbeaten into accepting a version of the facts as put forward by the district court. If you will look at the transcript of the sentencing hearing, it starts out with Mr. Cothran, I'm sorry, Mr. Carlton's attorney conceding the appropriateness of the enhancement for the use of the minor to commit the crime. And then he goes into a discussion of the law about the appropriateness of the enhancement for distribution of drugs in a penal facility. And then at page record citation 470, he says, it was his co-defendant, if anything, provided it to him, just, I mean, based simply on her testimony of what he was going to do with it, I don't think that's enough to say that he was going to distribute it. At that point, he's conceding that that is what Ms. Anderson testified to, and the government is no longer now required to put forth any evidence. The government had the agent there. He could have easily testified as to Ms. Anderson's statements to the government and established the need for the appropriateness of the enhancement. So are you saying that the government can just throw in anything but the kitchen sink, and if the defendant doesn't object, then it's in? No, sir, that is not what I'm saying. The government is obviously required to support the enhancements. For the government in good faith, as Mr. Carlton's counsel concedes, there's no allegation here that the government was in any bad faith. The court also agreed that that was Ms. Anderson's testimony, and the government believed that it had carried its burden through the evidence admitted at trial. If the court and the government had been made aware that that was error, that that is not, in fact, what Ms. Anderson said, then it could have been corrected that day. Do we know if this was a mistake made by the probation officer in misunderstanding things, or was it the U.S. attorney who misunderstood and represented to the probation office that this was testimony at trial? I believe the error was on the government. I'm not going to blame the probation officer, but it was also on the court who specifically said that he recalled Ms. Anderson testifying in this manner. I would point out that Ms. Anderson did not testify to the same offense, and it could be, I don't know, we do not have a transcript of that proceeding. It could be that that testimony came out either at her guilty plea or at her sentencing, and that would be how the court was aware, but, of course, the court would not normally be aware of the type of pretrial interview that it would have come out in that the government would have been aware of. But I just wanted to point out that Mr. Carlton's attorney at trial or at the sentencing hearing did affirmatively agree that that was her testimony without being browbeat by the judge, and then two pages later, he again affirmed, well, Your Honor, I mean, that's what Ms. Anderson testified to, but besides her testimony, nothing else has been provided to prove that fact, that statement to be a fact. So at that point, he had invited the error of which he now complains, and he is not entitled to relief unless, I'm sorry, he is not entitled to relief unless he can prove that he has been subject to a manifest misjustice, and there is case law in this circuit that says that a minor discrepancy in the sentencing guideline range calculation does not work a manifest misjustice. Is it your position that there is no manifest injustice here for the additional reason that the quantity of 40 items of the marijuana is so large that it wasn't likely to be a personal use and that sort of thing? It is, Your Honor, and that was also argued by the trial court at the sentencing hearing. Ms. Anderson testified that she bought some gloves and she took the marijuana and she placed it in the tips of the gloves and cut the tips off and tied them up and she stuffed those in her bra and carried into the penitentiary 40 to 50 of these, she called them tips, they were also referred to as balloons throughout the transcript, to Mr. Carlton. At some point, she went into the bathroom and she transferred the marijuana from her bra into the child's pants, from which Mr. Carlton later found. She did not search Ms. Anderson before she left the facility even though they stopped the visit based on the suspicion that he was swallowing something. But she was kind of in a holding facility, it wasn't any kind of jail cell, she was placed in a staff lounge, I assume like a break room, and some of the marijuana tips fell out of her or the child's pockets while she was in the bathroom. There were three of the marijuana tips and those were, there were no whole tips recovered from Mr. Carlton. Once they passed through his system, there were five ruptured pieces of latex recovered from his feces, but they did recover the three that she had dropped. But the fact that it's 40 is not in dispute. No, ma'am. 40 is the minimum, she said, 40 to 50. Minimum, yeah. Okay. Yes. What do we do with the court's, the judge's statement in overruling the argument said, well, I appreciate your argument, I would possibly agree with you absent the affirmative testimony from what witnesses that I believe was unrebutted. It seems to me that the court is saying that it's relying on that statement in making its decision. So even if we have independent evidence of a large amount that would look like it was for distribution, we also have this statement from the judge that seems to say that he relied on that statement in making his ruling. I agree that it can be construed to mean that. I could also argue that the court really didn't give any serious consideration because it didn't feel that it had to, to the argument about the quantity of drugs being brought into him. And had he given . . . And that's what, I've tried to get this answer two or three times and maybe nobody knows it. Forty fingertips from the latex gloves. How much marijuana are we talking about or do we know? I mean, I don't know how you measure marijuana. Joints? Grams? How much marijuana was it? I asked that question and there was no, the chemist was not able to come to any conclusion. He weighed the three fingertips that were sent to him and it weighed, they weighed 1.43 grams total. So I averaged that out over the three and multiplied it by 40 to 50. This is in footnote 11 of my brief. And I came up with 19.07 to 23.8 grams of marijuana. What is the . . . Excuse me, how many joints? I'm trying to get an answer. I asked that question, Your Honor, and I was told that it depended on whether the joint was the size of your forearm or the size of your pinky. Basically, you could make a joint as big or as small as you wanted. Whether you're smoking blunts or small ones. So we don't know. I tried to find the answer. I have no idea how much marijuana is generally consumed by an individual at a time. I have never been a drug prosecutor, Your Honor, and I asked that question repeatedly of DEA agents and state police, drug specialists. And I gather you have no personal experience. I have no personal experience. You don't have to answer that. As I attest to every time I have my background investigation redone. But I've lost my train of thought. Your Honors, I would just submit in this case, given the standard of invited error, the fact that this is a very small discrepancy in his guideline range, the range as calculated by the PSR was 24 to 30 months. If the objection had been granted, it would have been 18 to 24. He received 27 months. I understand the three months is very important to him. But in the grand scheme of things, it is not a manifest misjustice. If you thought this was in Ms. Anderson's testimony at her plea or at her sentencing, why wasn't that included as part of the record? Because the court could rely on that in the related . . . why didn't you bring that to us to say, oh, it absolutely is in the record? I chalk it up only to my inexperience in appellate matters, Your Honor, and live and learn, and next time I will definitely do that. But . . . and I should have, and I apologize. I did look at her PSR, and I will represent it to the court. It is not in her PSR. She did get the enhancement, but they don't state in the PSR why she got the enhancement. I assume it was honestly because she brought the drugs into him, so she distributed it to him. I probably should know this, but is there an enhancement that was given because of the use of the child? Yes, ma'am. Remind me of that. Yes, ma'am. The defense attorney raised that in his brief, but not again in the reply brief, so I assume he agrees with me that it is because at the time that he waived that objection, he initially made one, and then on Record Excerpt 468, he waived it. He said, with regards to my objection on number four, which is to the use of the child, we'll concede that point. Right. So that's conceded, and that's not before us about the use of the child. Yes, ma'am. And he's shaking his head to agree with you on that. Yes, ma'am. One other thing. Did the defense attorney agree not only that the testimony was there, that Ms. Anderson said it, but also agree that the enhancement was appropriate? No, ma'am. Through the end of the hearing, the defense attorney was saying that it was  Yes, ma'am. all the way through to the end. Yes, Your Honor. Okay. Yes. If there are no more questions. Was the prosecutor that was at the sentencing the same prosecutor that was at trial? He was very new at the time of the trial. He sat at the table, but he did not actually participate in the trial, is my understanding, but by the time it came for sentencing, the attorney who handled the trial had left our office, and so the sentencing was assigned to him. So it was someone that was in the trial that heard the testimony that was at the sentencing? He sat there, yes, sir. If there are no further questions, I will cede back the balance of my time. Thank you. I think my opposing counsel made two key points that was brought up earlier. She said, and I wrote it down, the error was made by the government and the court, and that is correct. That's what occurred in this case. She said all three. Well . . . She said the government, the court, and the defense attorney. She said it was made by all three, and that was pretty much in the same sentence. Well, I wrote it down as two sentences, so we can argue about that, but I think it's clear that it was made by the government in the information provided to the probation office, because the probation report says, the information obtained from the government says that Ms. Anderson testified as such. So that's a clear error. Then the court picked up on that error. Did you go to Ms. Anderson? You didn't participate in any of this, so . . . No, I'm just a appellate counsel. Do you have any information as to whether Ms. Anderson testified to this at her sentencing or her plea? I have no clue. I could only speculate, like I said. I'm assuming it's either at her plea or . . . Well, I think counsel said it was not at her . . . it was not in her PSR, for one. Right. Would it be error if it was said that she said this, but it did not say she testified to this in court? She was interviewed by agents, and she told the agents she was given to her husband to distribute, but it was not trial testimony. That might be splitting a hair, but it might be enough of a hair to split different that I might have to concede that point. But in this case, it was not said that she told somebody. It was specifically said at trial. This is what came out at trial, and that is not correct. I think no one disputes that at this point, that that was not said at trial, and that's what was relied upon, and that's what defense counsel relied upon in filing his objection. There was no . . . When can we assume the Fifth Circuit has found manifest injustice in circumstances remotely like this? I couldn't find any. There's not a whole lot of cases on this whole point. As you can tell from the briefs, I've only cited a couple of cases, and the government cited a couple of cases, and I think the Canny case talks about the distinction would have been . . . it just talks about the distinction between the level of sentencing because of distribution rather than not distributing. I really can't find anything similar to this kind of situation. I mean, and I'm speculating, but my hope would be that a factual error as glaring as this just gets corrected by the trial court at the trial court level. I guess that's what troubles me the most about this is if the objection was made that she didn't say it, and then somehow you feel groundbreaking during the course of the trial and you acquiesce. Now, I can tell you now I don't agree that it was invited error. I mean, they're the ones who put it in the report. They bring it up. The judge agrees to it. The lawyer finally acquiesces, but I just don't understand why post-trial you don't file a motion and attach a copy of the transcript and say, this was wrong. But . . .  I'm speculating about why there aren't a lot of cases on it because my hope would be that this kind of stuff gets fixed at the district court level, but you can go ahead. I'm not asking a question. No, I understand Judge Graves, and I would think that most of the time it probably is or when it becomes an issue like this, somebody says, well, let's just pull the transcript and see what happened. Then you got an question one way or the other, but unfortunately, it didn't happen in this case, so you all have to give some guidance, I guess, to the lower courts on how do we handle this. But if we . . . as Judge Elrod pointed out, if it is plain error, this court does not have the authority to correct a factual . . . to consider it a plain error if it's a factual error. Well, you have the authority to fix an error if it's a clear factual error. If it's manifest injustice, which is an even harder standard than plain error. So if you can't do it under plain error, how can you possibly do it under manifest injustice? Well, it inappropriately added to the length of a person's incarceration, and I think our law has been clear for hundreds of years that anything that they were browbeaten . . . I mean, where . . . Show me some browbeating in this transcript. Maybe that's the wrong terminology, okay? At some point he gave up, I think, just my reading into it, where the judge specifically asked the question on page 472, well, doesn't the testimony in the record say that she . . . Ms. Anderson said this. The court doesn't appear to be hostile. It appears to be open and listening. There's nothing in the record that says, I don't want to hear from you anymore. Sit down, Mr. So-and-so. There's nothing like that in this record. I agree, and I agree. And I think, too, at some point, you know, when counsel argues a point that, even on appeal, at some point I can argue as strong as I can, but if you continue to come against me, at some point . . . Counsel was arguing the law point. Excuse me? Counsel was arguing the law point, not the fact point. Well, he was arguing, I think, the fact that his motion started everything and it's error and should be reversed, and so it, in a sense, can be corrected. Thank you. Thank you, Mr. . . . Is it Pleasance? Pleasance. Pleasance. We appreciate it. Your court appointed.